UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PAUL F. DESCOTEAU, et al., | ) | |
| | ) | |
|       Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil No. 09-312-P-S |
| | ) | |
| ANALOGIC CORPORATION, et al., | ) | |
| | ) | |
|       Defendants | ) | |

*RECOMMENDED DECISION ON MOTION FOR REMAND*

Plaintiff Paul F. Descoteau, on behalf of himself and all others similarly situated, seeks remand of the instant class-action case to the Maine Superior Court, Kennebec County, from which the defendants, Analogic Corporation and B-K Medical Systems, Inc., removed it by notice dated July 16, 2009, invoking this court's jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  *See* Plaintiffs' Motion To Remand ("Motion") (Docket No. 8); Notice of Removal (Docket No. 1).  For the reasons that follow, I recommend that the Motion be denied.

## I. Applicable Legal Standards

"CAFA provides that federal courts have jurisdiction over class actions based on state law when: (1) there is 'minimal' diversity (meaning that at least one plaintiff and one defendant are from different states); (2) the amount in controversy exceeds $5 million; and (3) the action involves at least 100 class members."  *Manson v. GMAC Mortgage, LLC*, 602 F. Supp.2d 289, 293 (D. Mass. 2009) (citing 28 U.S.C. §§ 1332(d)(2) & (5)(B)).  For purposes of the second requirement, "[t]he question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties."  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448

(7th Cir. 2005). "That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal." *Id*. *See also Amoche v. Guarantee Trust Life Ins. Co*., 556 F.3d 41, 51 (1st Cir. 2009) ("[A] court's analysis of the amount in controversy focuses on whether a removing defendant has shown a reasonable probability that more than $5 million is in controversy *at the time of removal*. Events subsequent to removal that reduce the amount in controversy below the jurisdictional minimum do not divest a federal court of jurisdiction.") (emphasis in original).

The "burden of showing federal jurisdiction is on the defendant removing under CAFA." *Id*. at 48. A "reasonable probability" standard applies. *Id*. at 50. The First Circuit has explained:

> [T]he reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits. Yet because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence. The 'reasonable probability' language better captures the preliminary nature of this inquiry, reserving the preponderance of the evidence terminology for other conclusions.
>
> ***
>
> [D]eciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds $5 million may well require analysis of what *both* parties have shown. Merely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient. In the course of that evaluation, a federal court may consider which party has better access to the relevant information.

*Id*. at 50-51 (citations and footnote omitted) (emphasis in original). *See also, e.g., Manson*, 602 F. Supp.2d at 294 n.9 ("The burden [of demonstrating amount in controversy for purposes of CAFA] is . . . not an onerous one. The Court of Appeals recognized that at the removal stage

little or no evidence has typically been produced. Consequently, a court considering the amount in controversy need not view the evidence solely in the light most favorable to the plaintiffs; rather, the court may review the evidence in the record presented by both sides.").

## II. Factual Background

The plaintiff does not contest that there is minimal diversity or that the putative class includes at least 100 members. *See* Motion. He seeks remand solely on the basis that the defendants fail to demonstrate that the aggregate amount in controversy exceeds $5 million. *See id*. The defendants point to two sources, the complaint and a sworn Federal Tort Claims Act ("FTCA") notice of claim filed by the plaintiff in a companion action, to make the requisite showing. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion To Remand ("Opposition") (Docket No. 19) at 3-5.

The complaint alleges, in relevant part:

> 6. The Complaint raises no federal questions and neither Descoteau, nor any member of the proposed class, allege[s] damages in excess of $75,000.00.
>
> \*\*\*
>
> 15. On February 7, 2003, Descoteau had a prostate biopsy performed at Togus using the B-K Medical Falcon ultrasound transducer assembly.
>
> \*\*\*
>
> 21. By letter dated April 14, 2006, Descoteau . . . was notified by the Department of Veteran Affairs at the Togus VA Medical Center that the equipment used to perform the biopsy on February 7, 2003 may not have been satisfactorily sterilized or disinfected and that he might have been exposed to Hepatitis B, Hepatitis C or HIV.
>
> \*\*\*
>
> 24. Descoteau returned to Togus on April 27, 2006 and was subjected to testing for Hepatitis B, Hepatitis C, and HIV.

3

25. Descoteau experienced emotional and mental pain and anguish from the period of time running from when he was first notified that he might be infected, through the testing and counseling process, until he was finally told of his negative results.

26. Descoteau has lost wages resulting from having to miss work to take part in a testing process he would not have had to endure except for the Defendants['] actions.

27. On or about May 11, 2006, Descoteau was told his results were negative for Hepatitis B, Hepatitis C, and HIV.

\*\*\*

29. Descoteau brings this action on behalf of himself and all others similarly situated as representative of the following class:

> All veterans who underwent prostate biopsy procedures at Togus VA Medical Center in Augusta, Maine from January 1, 2003 through January 26, 2006, using the B-K Medical Transrectal Ultrasound Transducer Assembly . . . and were potentially exposed to HIV, Hepatitis B, Hepatitis C and other blood-borne viral pathogens as a result of the manufacturer's negligently unclear, unsafe and inadequate cleaning instructions, and suffered emotional distress as a result thereof.

30. The proposed class would be comprised of approximately 528 individuals[.]

\*\*\*

32. All of the claims of Descoteau are typical of each and every member of the proposed class and there is a well-defined community of interest among members of the proposed class, namely that each:

> a. Underwent the same, single, medical procedure – a prostate biopsy – using the B-K Medical Falcon Transrectal Ultrasound Transducer Assembly, Scanner Type 2101A, rectal probe Models 8808 or 8851;
>
> b. Were potentially exposed to blood-borne viral pathogens, such as HIV, Hepatitis B and C[,] because of the improper and inadequate cleaning instructions and training of the Defendants;

4

    c. Suffered emotional distress upon learning of the potential exposure to those blood-borne viral pathogens for a discre[te] time – specifically from when they were informed of the possible infection to when they received the negative results;

    d. Experienced the physical pain and discomfort of the blood testing to determine whether they had contracted any of those blood-borne viral pathogens as a result of said exposure; and

    e. Were ultimately determined to have not been infected.

  33. Descoteau is more than adequate to serve as the representative of the proposed class.

***

  45. Descoteau and other similarly situated individuals have each suffered damages in an amount less than $75,000.00.

Class Action Complaint, attached to Notice of Removal, ¶¶ 6, 15, 21, 24-27, 29-30, 32-33, 45.

  On May 9, 2008, Descoteau filed, in this court, a separate case against the United States of America pursuant to the FTCA, seeking damages arising from the same prostate biopsy that is the subject of the instant suit. *See* Complaint (Docket No. 1), *Descoteau v. United States of America*, Civil No. 08-144-P-S (D. Me.). Prior to filing that suit, the plaintiff signed a sworn FTCA notice of claim dated October 5, 2006, in which he stated, *inter alia*:

  2) On February 7, 2003, I had a prostate biopsy performed at the Togus VA Medical Center, 1 VA Center, Augusta, Maine.

***

  4) On April 14, 2006, I was notified by the Department of Veteran Affairs at the Togus VA Medical Center that the equipment used to perform the biopsy may not have been satisfactorily sterilized or disinfected and that I might have been exposed to Hepatitis B, Hepatitis C or HIV.

  5) As a result, I was offered blood tests to determine whether or not I in fact had any of those infections. . . .

  6) It took about a week to schedule those tests.

>    7)   After the tests were performed, I was not allowed to have the results until I had counseling. It took 3 weeks to schedule that counseling.
>
>    ***
>
>    9)   This incident resulted in emotional distress during the time period extending from when I received notice that I might have the Hepatitis B, Hepatitis C or HIV until that point in time when I was advised that I did not have any of those infections, together with the discomfort and inconvenience of being tested.
>
>    10)   As a result of this incident, I claim damages in the amount of Fifteen Thousand ($15,000.00) Dollars.

Notice of Claim Pursuant to Title 28 U.S.C. 2671 et. al., Exh. A to Opposition.

### III. Discussion

The defendants' argument is simple. They assert that because (i) the universe of potential class-action plaintiffs numbers approximately 528, (ii) the plaintiff alleges that his claim is typical of those of class members, (iii) the plaintiff swore under oath that he claimed $15,000 in damages, and (iv) 528 multiplied by $15,000 equals $7,920,000, the aggregate sum in controversy is shown to a reasonable probability to exceed $5 million. *See* Opposition at 5. They point out that such logic passed muster in *Manson*, in which the United States District Court for the District of Massachusetts found that the defendants had shown to a reasonable probability that a class-action claim exceeded $5 million when they multiplied their estimate of the value of the lead plaintiff's claim by the number of plaintiffs in the class. *See id*. at 6; *Manson*, 602 F. Supp.2d at 294 ("Given: (i) plaintiffs' demand for 'cancellation of fees and costs for invalid [mortgage foreclosure] sale processes'; (ii) plaintiffs' contention that Manson [whom the defendants calculated incurred foreclosure-related fees and costs of $8,061.78] is representative of the class; and (iii) an undisputed total number of class members of at least 1,000 persons, defendants['] assertion that the amount in controversy exceeds $8 million[]

satisfies their burden of demonstrating to a 'reasonable probability' that the amount in controversy exceeds $5 million.").

The plaintiff protests that the defendants' analysis is *too* simple: "Defendant[s] . . . cannot simply extrapolate the damages claimed by the named plaintiff, Mr. Descoteau, in his notice of claim filed under the [FTCA] to all putative class members because 1) Defendant[s] [have] offered no evidence that putative class member[s'] damage claims will be as much as Mr. Descoteau's, and 2) the damages claimed by Mr. Descoteau in his FTCA notice of claim are largely irrelevant to what his damages m[a]y be in this case." Plaintiff[s'] Memorandum of Law in Reply to Defendant[s'] Opposition to Plaintiff[s'] Motion To Remand ("Reply") (Docket No. 22) at 1.

The plaintiff points out that, unlike the defendants in *Manson*, the defendants in this case failed to offer their own expert calculation of the value of the plaintiffs' claims. *See id*. at 2 n.1 & 4. Yet, the defendants had no need to do so. They were able to adduce evidence in the form of the plaintiff's own sworn damages calculation. Moreover, in contrast to the *Manson* plaintiffs, the plaintiffs in this case suffered "soft" damages, the sorts of damages that evade easy calculation. The First Circuit in *Amoche* recognized that the plaintiff class sometimes would have superior knowledge of its own damages, particularly in view of the fact that motions to remand are brought early in a case, often before discovery has commenced. *See Amoche*, 556 F.3d at 50-51 ("[B]ecause questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence. . . . In the course of [the CAFA] evaluation, a federal court may consider which party has better access to the relevant information."). *See also, e.g., Kendrick v. Standard Fire Ins. Co*., Civil Action No.

06-141-DLB, 2007 WL 1035018, at *2-*3 (E.D. Ky. Mar. 31, 2007) (defendants' failure to adduce evidence of class size and amount in controversy not fatal for CAFA jurisdiction purposes when those numbers could be reasonably deduced from allegations of complaint, including alleged damages of named plaintiff).

The plaintiff further asserts that the defendants' calculation rests on pure speculation because, even assuming *arguendo* that his damages are as high as $15,000, they have adduced no evidence as to what other putative class members' damages may be. *See* Reply at 2-3. Yet, the *Manson* court accepted that, because the named plaintiff was representative of the class, her estimated damages provided an adequate springboard, for "reasonable probability" purposes, to calculate aggregate damages of the class. *See Manson*, 602 F. Supp.2d at 294. The same is true here.

The plaintiff next argues that his FTCA notice of claim is in any event irrelevant because it is merely a notice required to be filed to preserve claims against the government and may or may not end up reflecting the "amount in controversy" between the parties should litigation be pursued. *See* Reply at 3-4; *see also, e.g.*, 28 U.S.C. § 2675(a)-(b) (injured party required to file notice of claim with appropriate federal agency to preserve tort claim against the United States government; an "[a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim"); 28 C.F.R. § 14.2(a) (notice of claim must include "claim for money damages in a sum certain").

8

I am unpersuaded. As noted above, in view of the nature of the damages sought, compensating in the main for emotional distress, the plaintiff was in a superior position to assess the value of his damages. He was required for FTCA purposes to set forth the maximum amount that he would seek in damages absent newly-discovered evidence. *See* 28 U.S.C. § 2675(b). It can be fairly inferred that he would not seek less were a suit to be filed and, therefore, the amount in controversy would not be lower. His sworn statement, for FTCA notice purposes, of the value of his claim constitutes reasonable evidence of the amount in controversy in his case, as well as the amount in controversy with respect to putative class members who endured substantially the same procedure.

The plaintiff finally contends that the defendants have erroneously relied on the fact of the early stage of the lawsuit and the plaintiff's allegedly superior knowledge to relieve themselves of the burden of demonstrating the existence of CAFA jurisdiction. *See* Reply at 4-5. He asserts that the defendants had adequate time to hire an expert to prepare a damages estimate similar to that offered by the *Manson* defendants. *See id.* But, the defendants' reliance on these factors is not misplaced. The First Circuit has made plain that they properly may be taken into consideration. *See Amoche*, 556 F.3d at 50-51. Further, as noted above, the defendants have adduced adequate evidence, albeit in the form of the plaintiff's own allegations in his complaint and own sworn declaration, to demonstrate a reasonable probability that the aggregate claims of the plaintiff class exceed $5 million.

### IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion to remand the instant suit to state court be **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of October, 2009.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge